UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                 )
HENOK ARAYA,                     )
                                 )
          Plaintiff,             )
                                 )
     v.                          ) Civil Action No. 11-2050 (RWR)
                                 )
JUDGE JOHN H. BAYLY, JR.,        )
                                 )
          Defendant.             )
_____)

### MEMORANDUM OPINION

     Pro se plaintiff Henok Araya brings suit against Associate

Judge John Bayly of the Superior Court of the District of

Columbia, alleging that Judge Bayly violated the constitution

and the District of Columbia Human Rights Act ("DCHRA"), D.C.

Code § 2-1401 *et seq.*, in the course of divorce proceedings

initiated by Araya.  Araya seeks declaratory relief regarding

findings and rulings made by Judge Bayly and injunctive relief

requiring community service.  Because Araya's suit seeks the

functional equivalent of appellate review of an adverse local

court judgment, the suit will be dismissed for lack of subject

matter jurisdiction under the Rooker-Feldman doctrine.[1]

_____

     [1] In light of the finding that the Rooker-Feldman doctrine
precludes subject matter jurisdiction, this opinion does not
address the defendant's alternative argument that the doctrine
of Younger v. Harris, 401 U.S. 37 (1971), requires abstention
from interfering in ongoing proceedings in District of Columbia
courts.

## BACKGROUND

Judge Bayly issued a judgment and decree of divorce absolute and an order of custody and support on a complaint brought by Araya in the Family Court Division of the Superior Court of the District of Columbia.  (Compl., Ex. 2, August 24, 2011 Order ("August 24, 2011 Order").)  The amended complaint contains excerpts from the transcripts of the divorce proceedings.  Araya alleges that Judge Bayly improperly permitted Araya's then-wife's attorney to make comments and question Araya regarding Araya's religious background and its relevance to child custody.  (Am. Compl. at 4-7.)  Araya further alleges that Judge Bayly made improper findings that Araya had been convicted of intrafamily offenses in the state of the Virginia.  (Id. at 7-8.)  He also alleges that Judge Bayly made improper findings regarding Araya's ownership of property (id. at 8-10) and tax liability (id. at 10-11).

Araya brings claims under 42 U.S.C. § 1983, 28 U.S.C. § 2202, and the DCHRA, asserting that Judge Bayly violated the First Amendment (Am. Compl., Count One); violated principles of procedural due process, the Double Jeopardy Clause, and collateral estoppel (id., Count Two); effected an unconstitutional taking (id., first[2] Count Three); unlawfully

---

[2] Araya's amended complaint has two separate sections labeled as Count Three.

found that Araya had engaged in illegal construction (id., second Count Three); violated the Sixth Amendment (id., Count Four); unlawfully transferred tax deductions (id., Count Five); imposed cruel and unusual punishment (id., Count Six); violated Araya's right to a fair trial (id., Counts Seven and Ten); impermissibly exercised jurisdiction over allegations related to cases in the state of Virginia (id., Count Eight); committed a fraud upon the court (id., Count Nine); unlawfully discriminated against Araya (id., Count Eleven); and failed to disqualify himself as a judge when his impartiality could reasonably be questioned (id., Count Twelve).  Araya seeks a judgment declaring unlawful specific elements of Judge Bayly's order and related actions taken in the divorce proceedings.  (Am. Compl. at 40-42.)  Specifically, he seeks declarations that Judge Bayly engaged and aided and abetted in religious discrimination by "send[ing] [Araya's] child to [C]atholic church," and by permitting questioning regarding religion during the divorce proceedings, and that such conduct was "not a judicial act." (Am. Compl., Prayer for Relief ¶¶ 1-5.)  He further requests declarations that the Judge unconstitutionally subjected Araya to a "trial of criminal offenses" (id. ¶¶ 6-7); that Judge Bayly's orders and findings regarding Araya's property constituted a taking and violated due process (id. ¶¶ 8-9); that Judge Bayly's findings regarding Araya's income and tax

liability be declared in violation of due process and "void ab initio" because federal courts possess exclusive jurisdiction over taxation (id. ¶¶ 10-11); and that Judge Bayly's orders regarding child visitation constituted cruel and unusual punishment (id. ¶¶ 12-13).  In addition, Araya seeks declaratory judgments regarding Judge Bayly's impartiality and judicial qualifications (id. ¶¶ 14, 21-24), ability to physically hear the trial (id. ¶ 15), and statements and rulings on motions (id. ¶¶ 16-18).  He also seeks an order that Judge Bayly perform mandatory community service.  (Id. ¶ 19.)

Judge Bayly moved to dismiss the case for lack of subject matter jurisdiction and argued in the alternative that the court should abstain from interfering in ongoing local court proceedings.  Araya maintains that jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and D.C. Code § 2-1403.03, and that there are no ongoing proceedings in District of Columbia courts to warrant abstention.

DISCUSSION

A federal court must ensure that it has subject matter jurisdiction before reaching the merits of a case.  On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts subject the plaintiff's factual allegations to closer scrutiny than would apply on a motion to dismiss for failure to state a claim.  Flynn v. Veazey

Constr. Corp., 310 F. Supp. 2d 186, 190 (D.D.C. 2004). "[I]t has been long accepted that the [court] may make appropriate inquiry beyond the pleadings to satisfy itself [that it has] authority to entertain the case" in considering a Rule 12(b)(1) motion. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (internal quotations omitted). The party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Georgiades v. Martin-Trigona, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984).

The Supreme Court has made clear that lower federal courts do not possess jurisdiction over civil actions seeking review of state court judgments. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that federal district court lacked jurisdiction to hear constitutional challenges to a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) (reaffirming Rooker). Accordingly, under the Rooker-Feldman doctrine, "[r]eview of such judgments may be had only in [the Supreme] Court." Feldman, 460 U.S. at 482; see also Lance v. Dennis, 546 U.S. 459, 463 (2006) (emphasizing that 28 U.S.C. § 1257 vests the Supreme Court, and not the lower federal courts, with appellate jurisdiction over state court judgments). The D.C. Circuit recognizes that the doctrine "prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court," Gray

v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002), and that the
doctrine extends to review of District of Columbia courts,
Richardson v. District of Columbia Court of Appeals, 83 F.3d
1513, 1514 (D.C. Cir. 1996).  The jurisdictional bar is limited
to "cases of the kind from which the doctrine acquired its name:
cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the district
court proceedings commenced and inviting district court review
and rejection of those judgments."  Exxon Mobil Corp. v. Saudi
Basic Indus. Corp., 544 U.S. 280, 284 (2005).

        The Rooker-Feldman doctrine "bars lower federal courts from
considering not only issues raised and decided in the state
courts, but also issues that are 'inextricably intertwined' with
the issues that were before the state court."  Washington v.
Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quoting Feldman, 460
U.S. at 486).  To determine whether an issue is "inextricably
intertwined" with a state court judgment, courts inquire whether
"success on the federal claim depends upon a determination 'that
the state court wrongly decided the issues before it.'"  Phyler
v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) (quoting Charchenko
v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).  The
doctrine does not bar the exercise of jurisdiction over claims
that are truly independent of a state court judgment.  Stanton
v. D.C. Court of Appeals, 127 F.3d 72, 75-76 (D.C. Cir. 1997);

see also Skinner v. Switzer, 131 S. Ct. 1289, 1298 (2011)
(noting that "a state-court *decision* is not reviewable by lower
federal courts, but a *statute or rule governing the decision* may
be challenged in a federal action") (emphasis added).  Courts
must closely examine a plaintiff's suit to determine whether
claims, however styled, effectively seek review of an adverse
decision.  See, e.g., Hunter v. U.S. Bank Nat'l Ass'n, 698 F.
Supp. 2d 94, 100 (D.D.C. 2010), aff'd, 407 F. App'x 489 (D.C.
Cir. 2011) (per curiam) (dismissing claim "based entirely on the
alleged impropriety" of a state court action, even though the
claim was "not styled as an appeal from the . . . action").

In the instant case, Araya seeks multiple declaratory
judgments that Judge Bayly violated various constitutional and
statutory provisions by making allegedly improper findings and
decisions in divorce proceedings between Araya and his then-
spouse.  Where a state or local court "clearly had jurisdiction
over [a] divorce," and a party "believe[s] the state court's
result was based on a legal error, the proper response [is] the
same one open to all litigants who are unhappy with the judgment
of a trial court: direct appeal."  Casale v. Tillman, 558 F.3d
1258, 1261 (11th Cir. 2009).  The Rooker-Feldman doctrine bars a
lower federal court from entertaining a challenge to a local
court divorce judgment or to issues inextricably linked with it.
Id.; see also Brown v. Koenick, No. 96-5296, 1997 WL 150101, at

*1 (D.C. Cir. Feb. 27, 1997) (per curiam) (summarily affirming the dismissal of complaint that "s[ought], in essence, review of a divorce judgment entered by a state court" and presented other claims that were so "inextricably intertwined with [the] attack on the divorce proceedings [so as to] impermissibly attack[] the Superior Court's judgment itself").

Araya argues that the Rooker-Feldman doctrine does not bar his case because "Judge Bayly had no subject matter jurisdiction in most of [the] allegations," and because "for the rest of the allegations, he lost subject matter jurisdiction because he continued to hear the trial even though he was legally disqualified."  (Pl.'s Opp'n to Def.'s Mot. to Dismiss Am. Compl. ("Pl.'s Opp'n") at 1; see also Am. Compl. at 2 (stating that Araya does not seek "[d]irect review of Judge Bayly's final orders unless where Judge Bayly had no subject matter jurisdiction where the order was void ab initio").)  In Rooker, the Supreme Court distinguished between challenges to a state court judgment rendered "without jurisdiction and absolutely void" and challenges that are "merely an attempt to get rid of the judgment for *alleged errors of law committed in the exercise of [the state court's] jurisdiction*."  Rooker, 263 U.S. at 416 (emphasis added).  Each of Araya's purportedly "jurisdictional" challenges is actually a claim for review of alleged errors made

by Judge Bayly in the course of proceedings over which the judge possessed jurisdiction.

The Superior Court of the District of Columbia is "a court of general jurisdiction," Andrade v. Jackson, 401 A.2d 990, 992 n.5 (D.C. 1979) and District of Columbia statutes expressly grant that court subject matter jurisdiction over actions for divorce and child support, DeGroot v. DeGroot, 939 A.2d 664, 668 (D.C. 2008).  Under District of Columbia law, the Family Court, a division of the Superior Court, has "jurisdiction over . . . actions for divorce . . . including proceedings incidental thereto for alimony . . . and for support and custody of minor children."  D.C. Code § 11-1101(a)(1).  Judge Bayly, who presided over Araya's divorce proceedings in Family Court (see August 24, 2011 Order), plainly had the requisite subject matter jurisdiction to do so.

Araya claims that Judge Bayly lacked the jurisdiction to adjudicate matters relating to criminal allegations arising in the state of Virginia and federal tax issues.  (Pl.'s Opp'n at 7; see also Am. Compl. at 2 (alleging that the divorce proceedings were "converted into a criminal proceeding without notice"); id. at 3 (alleging Judge Bayly "transferred legal tax deductions . . . where he has no subject matter jurisdiction").)  Araya's claims misunderstand the significance of Judge Bayly's findings.  Judge Bayly considered Araya's criminal history and

tax liability in the course of adjudicating custody, property, and marital and child support disputes related to the divorce. (See August 24, 2011 Order at 8-13, 27-30.)  Such consideration did not transform the civil divorce proceedings into a criminal trial or a tax court.  To the extent that Araya maintains that Judge Bayly's findings were erroneous, he "is entitled to have his claims heard through the course of proceedings in the District of Columbia courts and, if unsatisfied, through petition [to the United States Supreme Court] for certiorari." Richardson, 83 F.3d at 1516.

Araya also argues that Judge Bayly's actions are reviewable because the judge "was disqualified as a judge to continue with trial when he accommodated and abetted and aided in religious bias, hate and discrimination." (Pl.'s Opp'n at 2.) Accordingly, Araya contends that Judge Bayly "lost subject matter jurisdiction over the entire trial and the Rooker-Feldman doctrine does not apply." (Id. at 3.)  Contrary to Araya's assertions, Judge Bayly did not lose jurisdiction when his impartiality was allegedly subject to dispute.  Super. Ct. Civ. R. 63-I governs judicial recusal in the Superior Court and provides a mechanism for a party to assert, by affidavit, that the judge before whom his matter is assigned has personal bias

or prejudice.[3]  "A judge has an obligation not to recuse himself
when it is not required."  Mayers v. Mayers, 908 A.2d 1182, 1191
(D.C. 2006).  Araya does not allege that he submitted an
affidavit in accordance with the local court rule.  Even in the
event Araya did properly submit such an affidavit, a Superior
Court judge's allegedly incorrect decision not to recuse himself
does not divest him of subject matter jurisdiction over a case
before him.  Rather, the District of Columbia Court of Appeals
may review the recusal decision as a part of its review of the
trial court's judgment and may order relief where appropriate.
See id. at 1194 (rejecting challenge to Superior Court judge's
impartiality in divorce and custody proceedings and affirming
the trial court's judgment granting an absolute divorce and
denying motion to terminate child support).

     Araya argues that he asserts "independent claims" not
barred by the Rooker-Feldman doctrine and that he has "not asked
[for] any final order of divorce to be reviewed or rejected."
(Pl.'s Opp'n at 6; see also id. at 3 (arguing that the "Rooker-
Feldman Doctrine does not preempt 42 U.S.C. 1983").)  An
examination of the complaint and the relief sought makes clear,
however, that *all* of Araya's claims require review and rejection

---

[3] Araya mistakenly relies on case law regarding 28 U.S.C.
§ 144, which governs the recusal of federal district judges.
That statute provides no basis for federal district court review
of Judge Bayly's qualifications to preside over Araya's case.

of findings, decisions, and actions integral to the divorce proceedings.  The declaratory relief sought requires reconsideration of Judge Bayly's rulings regarding permissible lines of questioning (Am. Compl. at 4-7), the relevance and accuracy of past criminal history (<u>id.</u> at 7-8), and the status of property owned and income earned by Araya and his ex-wife (<u>id.</u> at 8-11).  Araya's claims for a declaration regarding Judge Bayly's hearing (<u>id.</u>, Prayer for Relief ¶ 15) and for an injunction requiring community service (<u>id.</u> ¶ 19) are integrally linked to Araya's general attack on the propriety of the divorce judgment.  Araya's complaint presents no independent claims over which subject matter jurisdiction is proper.[4]

---

[4] Araya also contends that the <u>Rooker-Feldman</u> doctrine does not apply to this suit because "the defendant, Judge Bayly, is different than [the defendant in] my case in the Superior Court."  (Pl.'s Opp'n at 6.)  Araya relies on <u>Lance v. Dennis</u>, 546 U.S. 459 (2006), which held there was no bar to a federal action brought by *plaintiffs* who were not parties to a prior state court action that resulted in the state court's approval of a legislative redistricting plan and who, as non-parties, could not appeal the judgment in the state case.  Araya was himself a party to the Superior Court proceedings underlying this federal action and can challenge the Superior Court's decision by means of appeal in District of Columbia courts. That he brings this action against Judge Bayly, rather than against the defendant in the Superior Court case (his ex-wife), does not alter the fundamental fact that the case seeks review of a local court judgment.  <u>See, e.g.</u>, <u>Brown</u>, 1997 WL 150101, at *1 (dismissing challenge to divorce proceedings brought against state judge and others under <u>Rooker-Feldman</u> doctrine); <u>Wall v. Wall</u>, No. 2:09-cv-527-MEF, 2009 WL 3110208, at *1 (M.D. Ala. Sep. 24, 2009) (same).

CONCLUSION

The complaint effectively seeks review of a Superior Court judgment.  The Rooker-Feldman doctrine bars federal district courts from reviewing local court decisions or issues that are inextricably intertwined with them.  The complaint therefore will be dismissed for lack of subject matter jurisdiction.  A final order accompanies this memorandum opinion.

SIGNED this 11th day of July, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge